IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

No. 2009 – CV- 00554 JB/DJS

LYNN McDONALD-CUBA,

    Plaintiff

vs.

SANTA FE PROTECTIVE SERVICES, INC.,

    Defendant

and

SANTA FE PROTECTIVE SERVICE, INC.,

    Counter-Claimant

vs.

LYNN McDONALD-CUBA,

    Counter-Defendant

## ANSWER AND COUNTERCLAIM

Defendant Santa Fe Protective Services by its attorneys the Barnett Law Firm, P.A. (Mickey D. Barnett) for its Answer and Counterclaim states:

### ANSWER TO COMPLAINT FOR DAMAGES FROM VIOLATION OF TITLE VII AND THE NEW MEXICO HUMAN RIGHTS ACT AND DEFAMATION

1. Defendant admits paragraph 1.

2. Defendant admits paragraph 2.

3. Defendant admits paragraph 3.

4. Defendant admits paragraph 4.

1

5. Defendant admits paragraph 5.

6. Defendant admits paragraph 6.

7. In response to paragraph 7, Defendant admits that Lynn McDonald –Cuba ("McDonald –Cuba") was given a 6.7% raise at that time, and previously received a 13% pay raise.

8. In response to paragraph 8, Defendant admits that in the Spring of 2007, standard pay raises ranged from about 3.5 % to 6%. Terry Cuba proposed this salary range. McDonald-Cuba made no complaint when she was advised of her raise, which was 6.7%.

9. In response to paragraph 9, Defendant admits that Santa Fe is a female and minority owned and managed company. The salary increase for its two male Directors reflected an increase in their duties (because of the departure of Terry Cuba) and the fact they had received no raise for an extended period of time. Except as expressly admitted herein, Defendant denies the averments contained in paragraph 9.

10. In response to paragraph 10, Defendant admits that Plaintiff openly complained that male employees were receiving preferential treatment. Except as expressly admitted herein, Defendant denies the averments contained in paragraph 10.

11. In response to paragraph 11, Defendant expressly admits that in November 2007, McDonald-Cuba came to Sherry Meier to speak about the alleged disparity in salaries. Sherry Meir asked McDonald-Cuba if she wanted to file a formal complaint and she declined.

12. Defendant denies paragraph 12.

13. Defendant denies.paagraph 13.

14. Defendant admits paragraph 14.

15. Defendant admits paragraph 15.

16. In response to paragraph 16, Defendant expressly admits that Defendant knew of the existence of Brahma Defense but did not know it was a competitor.

17. Defendant denies paragraph 17

18. In response to paragraph 18, Defendant admits that Defendant knew that certain other employees had outside interests. But these interests did not conflict with Defendant's. Except as expressly admitted herein, Defendant denies the averments contained in paragraph 18.

19. Defendant denies paragraph 19.

20. Defendant denies paragraph 20.

21. Defendant denies paragraph 21.

22. Defendant denies paragraph 22.

23. Defendant denies paragraph 23.

24. Defendant denies paragraph 24.

COUNT I

25. n/a.

26. Defendant denies paragraph 26.

27. Defendant denies paragraph 27.

COUNT II

28. n/a.

29. Defendant denies paragraph 29.

30. Defendant denies paragraph 30.

## COUNTERCLAIM

Santa Fe Protective Services, Inc. ("Santa Fe") for its Counterclaim against Lynn McDonald-Cuba ("McDonald-Cuba"), states:

1. Santa Fe is a corporation organized and existing under the laws of the State of New Mexico.

2. Santa Fe provides security services to business and governmental customers.

3. Christina Maki is the President of Santa Fe.

4. On February 9, 2005, McDonald-Cuba (then known as Lynn McDonald) was offered and accepted a part-time position at Santa Fe as a bookkeeper.

5. On February 10, 2005, McDonald-Cuba was given Santa Fe's Rules of Conduct and Discipline, and signed a receipt attesting that she has "read said rules and will abide by the rules and requirements as stated."

6. Under the Rules, prohibited conduct includes "misappropriation of, or misuse of company property or property of…a customer.", and "(E)ngaging in employment or business practices that are illegal, unethical or in conflict with the business interests of the company." Rules of Conduct and Discipline, pp. 4 and 6

7. On February 10, 2005, McDonald-Cuba also signed Santa Fe's Restrictive Covenants Policy, attesting that she understands the contents of this policy and accepts the responsibility of meeting all policy limitations and restricted actions.

8. The Covenant states that "…Employee shall not…use for employee's benefit or disclose to any other person any Confidential Information, or upon leaving

4

the employ of Santa Fe take with Employee any Confidential Client information."

9. The Covenant further states that "in addition to any remedy at law for such actual or threatened breach…..SFPS …shall be entitled to attorney fees… and any other remedies available."

10. On September 26, 2005, Santa Fe offered McDonald-Cuba a full time position as Financial Account Manager, with a starting salary of $58,000 per year.

11. On April 17, 2006 McDonald-Cuba received a pay increase of 13%, to $65,389.

12. In April 2007 McDonald-Cuba was promoted to Director of Finance and Accounting with a salary of $69,789, an increase of 6.7 %

13. Terry Cuba had worked for Santa Fe since February 2001, most recently as chief operating officer.

14. Terry Cuba and McDonald-Cuba met at the company and were married on March 18, 2006.

15. Terry Cuba left the company at the end of May 2007.

16. Without advising Santa Fe, Terry Cuba and McDonald-Cuba formed a rival company called Brahma Defense Enterprise LLC ("Brahma Defense") which was set up to do the same kind of business as Santa Fe, including the provision of security guards and patrol services. Because Brahma Defense, like Santa Fe, was a female and minority owned business, both businesses would be going after the same contracts.

17. Publicly, Terry Cuba stated that the new business was only for the purpose of consulting.

18. McDonald-Cuba had access to confidential financial information of Santa Fe and its customers.

19. McDonald-Cuba was the President and 51% owner of Brahma Defense while she continued to work at Santa Fe.

20. Brahma Defense's web site reported Estimated Annual Sales of $130,000.

21. Brahma Defense was listed in the Central Contractor Registry, where Santa Fe also is listed for security referrals.

22. On December 5, 2009, Santa Fe's President Christina Maki learned that Brahma Defense was actually in business to compete with Santa Fe.

23. After learning this information, Santa Fe terminated McDonald-Cuba's employment on December 6, 2007, providing her with her severance check the same day.

24. Following her termination, McDonald-Cuba filed a discrimination claim against Santa Fe with the EEOC, which issued a Letter of Non Determination on March 10, 2009.

25. McDonald-Cuba also filed for unemployment benefits which were denied by the Department of Labor hearing officer who found that McDonald-Cuba was terminated from her employment for misconduct.

26. An Appellate Administrative Law Judge affirmed the dismissal.

27. The Secretary of the Departments of Labor upheld the dismissal.

28. On information and belief, in her position of trust with Santa Fe, McDonald-Cuba acquired confidential information that she and her husband used to the detriment of the company.

29. Terry Cuba and McDonald-Cuba, husband and wife, worked together in the same field, and the knowledge of one may fairly be attributed to the other.

30. McDonald-Cuba breached her duty of loyalty to the company, the Rules of Conduct and Discipline and the Restrictive Covenants Policy.

31. On information and belief, McDonald-Cuba acquired and removed confidential information about Santa Fe and used it to promote their competing company.

COUNT I: BREACH OF CONTRACT

32. McDonald-Cuba breached contractual obligations of confidentiality, trust and loyalty contained in the Rules of Conduct and Discipline, and in the Restrictive Covenants Policy, both of which she signed.

Wherefore Santa Fe Protective Services should be awarded its damages to be proved at trial and its attorney fees, along with such other relief as is just proper.

COUNT II: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

33. Santa Fe had economic relationships with its customers, from whom it expected economic benefit.

34. McDonald-Cuba knew of the existence of those relationships.

7

35. McDonald-Cuba interfered with these relationships.

36. Santa Fe was damaged by this interference.

Wherefore, Santa Fe Protective Services should be awarded its damages to be proved at trial, and such other relief as is just and proper.

## COUNT III: BREACH OF THE DUTY OF LOYALTY

37. An employee has a duty of loyalty to the employer.

38. An employee has a duty to use his best efforts on behalf of his employer.

39. An employee may not form a company to compete with her employer.

40. The employee may not compete with the employer.

41. McDonald-Cuba violated this duty of loyalty.

Wherefore, Santa Fe Protective Services should be awarded its damages to be proved at trial, and such other relief as is just and proper.

Respectfully submitted,

*/s/ Mickey D. Barnett*
MICKEY D. BARNETT
Attorneys for Defendant / Counterclaimant
1905 Wyoming Blvd., NE
Albuquerque, NM 87112
(505) 275-3200

I certify that a copy of this
Answer and Counterclaim
was hand delivered to Bryan J. Davis,
Davis & Gilchrist, PC this
__8th__ day of July, 2009

*/s/ Mickey D. Barnett*
MICKEY D. BARNETT

8